## Morris Rothberg and Ellen F. Rothberg v. Joseph Olenik

[262 A.2d 461]

No. 94-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 3, 1970

*Rosenberg & Rosenberg,* Burlington, for Plaintiff.

*Paul, Frank & Collins,* Burlington, for Defendants.

**Keyser, J.** This case presents the question of whether there is a warranty implied by the law of this jurisdiction when a

builder-vendor sells his newly constructed house to a buyer, that the house is built in a good and workmanlike manner and suitable for habitation.

The plaintiffs' suit is founded on a breach of an implied warranty against structural defects arising out of the purchase from the defendant as builder-vendor of the property in question. The defendant moved to dismiss the complaint on the ground that in this jurisdiction there is no implied warranty of fitness or any other implied warranty when a builder-vendor sells his house to a purchaser. The court granted the motion and the plaintiffs appealed from the judgment entered against them.

The stated question is one of novel impression in this jurisdiction and involves an issue not heretofore covered by our decisions. The problem is, however, far from novel in other jurisdictions and the cases show many developments have there taken place in comparatively recent years.

■ The motion to dismiss admits for the purpose of its consideration all facts well pleaded and it is not aided by facts not appearing in the pleading challenged by the motion. *Berry* v. *Whitney*, 125 Vt. 383, 385, 217 A.2d 41.

The defendant entered into a written contract with the plaintiffs on April 12, 1966, to sell them a new house which he then had under construction in South Burlington, Vermont. (A copy of the contract furnished the court is dated 1965.) The plaintiffs took title and possession of the premises on May 25, 1966. The following year the plaintiffs discovered that structural defects had appeared in the foundation. The walls were cracking and bulging; the foundation blocks were not tied together in a workmanlike manner so that the house was not secured to the foundation; the foundation walls lacked sufficient pilaster support for their length and height; and the lot was not graded properly nor the foundation properly water proofed which aggravated the damage to the foundation walls. The floors were uneven and hazardous and not finished in a workmanlike manner; also the entrance stairway was improperly constructed and unfinished. The defendant was requested to remedy these alleged defects but refused to do so.

The defendant relies upon the ancient doctrine of *caveat emptor*—let the buyer beware—to defeat plaintiffs' action and cites cases from jurisdictions which adhere to this rule.

■ ■ At common law in the sale of chattels the rule of *caveat emptor* was generally applied where there was no express warranty and no fraud on the part of the seller inducing the sale. 46 Am.Jur., Sales, § 337. *Caveat emptor* is fundamentally based upon the premise that the buyer and seller deal at arm's length, or stand on equal footing, and that the buyer had available means and opportunity to gain information, or to have an efficient inspection, concerning the subject matter of the sale which were equal to those of the seller. 77 C.J.S., Sales, p. 1159, § 315(c), notes 65–67.

■ A breach of an implied warranty of merchantability was the basis for holding Chrysler liable for injury caused by a defective automobile in *Henningsen* v. *Bloomfield Motors*, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1. The court said:

> "The uniform (sales) act codified, extended and liberalized the common law of sales. The motivation in part was to ameliorate the harsh doctrine of caveat emptor, and in some measure to impose a reciprocal obligation on the seller to beware. . . . And of tremendous significance in a rapidly expanding commercial society was the recognition of the right to recover damages on account of personal injuries arising from a breach of warranty. (citing cases) The particular importance of this advance resides in the fact that under such circumstances strict liability is imposed upon the maker or seller of the product. Recovery of damages does not depend upon proof of negligence or knowledge of the defect."

Today the doctrine of *caveat emptor* as related to sales of personal property has been severely limited in its application, or, to use the language of the defendant, "largely done away with." The doctrine of *caveat emptor* is one of judicial origin and, since our statutes are silent on the subject, no restriction rests on our courts for delimiting the application of the rule. This limitation is well pointed up in the development of the law in the products liability field. See *Green Mountain Mushroom* v. *Brown*, 117 Vt. 509, 95 A.2d 679; *DiGregorio* v. *Champlain Valley Fruit Co.*, 127 Vt. 562, 255 A.2d 183. And liability has been further extended by this Court to a food processor even though privity of contract was lacking. *O'Brien* v. *Comstock*

*Foods, Inc.,* 125 Vt. 158, 212 A.2d 69. Similarly, it was held in *Schipper* v. *Levitt & Sons, Inc.* (1965) 44 N.J. 70, 207 A.2d 314, 321, that when a manufacturer markets its defective products which cause injury, they may be held accountable under ordinary negligence as well as under expanding principles of warranty or strict liability.

The trend of 19th century decisions is stated in Story on Sales:

> "(T)he tendency of all the modern cases on warranty is to enlarge the responsibility of the seller, to construe every affirmation by him to be a warranty, and frequently to imply a warranty on his part, from acts and circumstances, wherever they were relied upon by the buyer. The maxim of caveat emptor seems gradually to be restricted in its operation and limited in its dominion, and beset with the circumvallations of the modern doctrine of implied warranty, until it can no longer claim the empire over the law of sales, and is but a shadow of itself. . . ."

The Supreme Court of the United States in an early case (1884) applied the doctrine of implied warranty, the antithesis of *caveat emptor,* to a real property situation involving false work and pilings driven into the bed of the Maumee River preparatory to erecting an iron bridge. *Kellogg Bridge Company* v. *Hamilton,* 110 U.S. 108, 3 S.Ct. 537, 28 L.Ed. 86. The Bridge Company, defendant below, had constructed some of the false work of scaffolding and then contracted with Hamilton to complete its contract for the erection of the bridge. Insufficiency developed in the false work done by the Company causing damage to Hamilton which he sought to recover from the Bridge Company. The Supreme Court said at page 90 (28 L.Ed.):

> "All the facts are present which, upon any view of the adjudged cases, must be held essential in an implied warranty. The transaction was, in effect, a sale of this false work, constructed by a company whose business it was to do such work; to be used in the same way the maker intended to use it, and the latent defects in which, as the maker knew, the buyer could not, by any inspection or examination, at the time discover; the buyer did not, because in the nature of things he could not, rely on his own

judgment; and, in view of the circumstances of the case, and the relations of the parties, he must be deemed to have relied on the judgment of the company, which alone of the parties to the contract had or could have knowledge of the manner in which the work had been done. The law, therefore, implies a warranty that this false work was reasonably suitable for such use as was contemplated by both parties. . . ."

The crucial question here is whether the doctrine of *caveat emptor* applies to the sale of a new house by a builder-vendor and it must be resolved on the basis of the particular facts presented in the case.

While we have no decisions of this Court directly in point with the case at bar, two of our reported cases show liability rested on the application of implied warranty. *Jackson* v. *Rogers*, 120 Vt. 139, 134 A.2d 620, was a contract action brought to recover damages of the defendant for failure to build a house according to the specifications and in conformity to usual building standards. The trial court charged the jury in part as follows: "Where no standard is spelled out in a building contract such as this as to the standard of workmanship to be applied to the construction and assembling of the materials by the builder, the Law implies a standard which is set forth as a 'good workmanlike manner' or 'good workmanlike construction' as that standard is established by the practices in the immediate vicinity. This means that that standard forms a term of this contract, as a matter of Law, and I so instruct you, just as if it were written in the document." We held that since no exception was taken to this charge, "it became the law of the case." Pages 143–144.

In *Sheldon* v. *Northeast Developers,* 127 Vt. 15, 238 A.2d 775, the plaintiff homeowner sued to recover damages against the defendant builder for the cost of repairing structural defects which developed in the foundation walls and cellar floor. The writ contained two counts. The first count was for breach of contract that the house to be built would be fit for the particular intended use; the second count was for negligence in the construction of the building. The case was submitted to the jury on count one, breach of contract, on a charge that permitted recovery only for damages consequent to any defective foundation and concrete work for which the defendant was

responsible. The jury returned a verdict for the plaintiff. Defendant's appeal related only to the extent of the damages recoverable and was overruled.

Although these two cases do not reach the issue before us, they do point in the direction of a non-recognition by the trial court of the doctrine of *caveat emptor*.

.The development and growth of the applicable law in other jurisdictions is shown by a review of the cases which follow.

In 1931 an English case, *Miller* v. *Cannon Hill Estate Ltd.*, 2 K.B. 113, the court by a *dictum* took a different and modified view in its prior strict application of the doctrine of *caveat emptor* to the sale of realty. The case involved a contract entered into by the plaintiff to purchase a house from the defendant. At the time of the signing of the contract, the house was still under construction. The defendant told plaintiff he would use the best material and perform the work in the best workmanlike manner but this was not put into the agreement. Sometime after plaintiff took possession excessive dampness penetrated the house due to defects in construction. In answer to plaintiff's suit for breach of contract, the defendant claimed there was no breach of duty as the contract of sale did not contain any warranties, either express or implied. The court in deciding for the plaintiff, held that where a purchaser buys a dwelling which is under construction, there is an implied warranty that upon completion, the dwelling will be fit for the purpose intended and habitable. In a later English case, *Perry* v. *Sharon Development Co., Ltd.* (1937) 4 All. E.L.R. 390, the court applied the implied warranty doctrine to a house substantially finished.

*Rogers* v. *Scyphers* (S.C. 1968) 161 S.E.2d 81, was a case founded on negligence in the construction of a house. In passing on the question the court said: "While most courts still adhere to the proposition that in the usual, normal sale of lands, and old buildings, the ancient doctrine of *caveat emptor* applies, with respect to a vendor, who is also the builder of a new structure, the decided trend of modern decisions is to make a distinction. Where the vendor is also the builder, he is today, by the weight of modern authority held liable for damages and injuries occurring after the surrender of title and possession, on one or more of three theories: (1) Implied warranty, . . .; (2) an imminently dangerous condition caused

by negligence in construction, and (3) the following proposition from Sec. 353 of the Restatement of the Law of Torts, 2d Ed. . . ."

The court, after citing numerous cases from other jurisdictions touching on the three theories above mentioned also said:

> "While no implied warranty is asserted or relied on in the instant case, we have included in the foregoing citations several cases wherein liability was predicated solely on the theory of implied warranty, simply to show the trend of the law in this field. The cases included which hold the builder-vendor liable for negligence in construction and/or on the basis of the Restatement Rule reach, we think, legally sound and just results."

The court added, "We can see no rational difference between the duty owed by the manufacturer of a chattel and the duty owed by the builder-vendor of a new structure."

The opinion continued by quoting the following from *Caporaletti* v. *A. F. Corporation*, D.C., 137 F.Supp. 14; *Id.*, 99 U.S. App.D.C. 367, 240 F.2d 53. "Conditions have radically changed since the origin of the general common law rule. Homes are being constructed on a large scale by persons engaged in the building business for the purpose of selling them to individual owners. The ordinary purchaser is not in a position to discover a latent defect by inspection, no matter how thoroughly his scrutiny may be, because usually he lacks sufficient familiarity with the complexities of building construction and the intricacies of applicable regulations. He should be able to rely on the skill of the builder who sells the house to him. Otherwise, he would be at the vendor's mercy. The realities of modern life necessarily lead to the conclusion that the builder should be liable for injuries caused by his negligence under such circumstances, either to the purchaser or to an invitee. Any other result would be unjust and intolerable."

In *Staff* v. *Lido Dune, Inc.* (1965) 47 Misc.2d 322, 262 N.Y.S.2d 544, the court in holding that an action for breach of express warranty was available to the plaintiff, went on to state that the trend in the law today is that there are implied warranties where a house is sold prior to completion, and that the house must be built in a good and workmanlike manner.

Other pertinent cases on this point are: *Hoye* v. *Century Builders* (1958) 52 Wash.2d 830, 329 P.2d 474; *Jones* v. *Gatewood* (Okla. 1963) 381 P.2d 158; *Glisan* v. *Smolenske* (1963) 153 Colo. 274, 387 P.2d 260, 263; *Weck* v. *A:M Sunrise Construction Co.* (1966) 36 Ill. App.2d 383, 184 N.E.2d 728 at pp. 731–734; *F & S Construction Co.* v. *Berube* (1963, C.A. 10 Colo.) 322 F.2d 782. See also Bearman, *Caveat Emptor* in Sales of Realty—Recent Assaults upon the Rule, 14 Van. L. Rev. 541, 543 (1961); Roberts, The Case of the Unwary Home Buyers, 52 Cornell L Q 835–842 (1967) in which the author points up the decline of *caveat emptor* as a viable doctrine governing the sale of new homes.

One of the early decisions on this question of implied warranty is *Vanderschrier* v. *Aaron* (1957) 103 Ohio App. 340, 140 N.E.2d 819, 821. In that case the court adopted the rule prevailing in England and held that an implied warranty of fitness for human habitation existed on the sale of a house before construction had been completed. And in deciding *Glisan* v. *Smolenske, supra,* the Colorado Supreme Court said, "We follow the *Vanderschrier* case."

After the Colorado Supreme Court decision in *Glisan* v. *Smolenske, supra,* the same court stated in *Carpenter* v. *Donohoe* (1964) 154 Colo. 78, 388 P.2d 399, that the determination of the existence of implied warranties in the sale of a new house should not be based on whether the dwelling was finished or unfinished at the time of sale, since this "is recognizing a distinction without a reasonable basis for it." The court continued: "We hold that the implied warranty doctrine is extended to include agreements between builder-vendors and purchasers for the sale of newly constructed buildings, completed at the time of contracting . . . . Where, as here, a home is the subject of sale, there are implied warranties that the home was built in workmanlike manner and is suitable for habitation." 388 P.2d, at page 402.

The case of *Schipper* v. *Levitt & Sons; supra,* was brought upon the theory of strict liability in tort. The defendant was a tract developer and failed to install a mixing valve. on the bathroom hot water faucet. The child of the purchaser's lessee was injured by excessive hot water drawn from the faucet. The court held that there was a question of negligence for the jury and that the defendant could be held liable on the theory

of warranty or strict liability upon proof that the design was unreasonably dangerous and proximately caused the injury. After citing recent out-of-state cases and law reviews, the court said, "Whether or not the cases may be differentiated, they undoubtedly evidence the just stirrings elsewhere towards recognition of the need for imposing on builder-vendors an implied obligation of reasonable workmanship and habitability which survives delivery of the deed." Page 327 (A.2d). The defendant claimed that imposition of warranty or strict liability principles on developers would make them "virtual insurers of safety of all who thereafter come upon the premises" to which the court said "That is not at all so." This was because "the injured party would clearly have the burden of establishing that the house was defective when constructed and sold and that the defect proximately caused the injury." Page 326 (A.2d).

In *Moore* v. *Werner* (1967, Tex.Civ.App.) 418 S.W.2d 918, the court affirmed a judgment for the purchasers of a new house from the builder-vendor on the ground that the rule of implied warranty applied. It added that there was no reason for any distinction between the sale of a new house and the sale of personalty, especially in a suit between the original parties to the contract of sale, one of whom constructed the house in question.

In *Bethlahmy* v. *Bechtel* (1966) 91 Idaho 55, 415 P.2d 698, the Idaho Supreme Court, in reversing a lower court judgment that there were no implied warranties in the sale of real estate, held that there was an implied warranty that the house would be free from major defects and habitable. The court said at page 710 (P.2d) that "The old rule of *caveat emptor* does not satisfy the demands of justice in such cases. The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of *caveat emptor* to an inexperienced buyer, and in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice."

The court quoted from *Schipper* v. *Levitt & Sons, supra,* saying, "The *Schipper* decision is important here because (1) it illustrates the recent change in the attitude of the courts toward the application of the doctrine of *caveat emptor* in

actions between the builder-vendor and purchaser of newly constructed buildings; (2) it draws analogy between the present case and the long accepted application of implied warranty of fitness in sales of personal property; and (3) the opinion had the unanimous approval of the participating justices."

The opinion in *Bethlahmy* goes on to say at page 711 (415 P.2d) that "The implied warranty or fitness does not impose upon the builder an obligation to deliver a perfect house. No house is built without defects, and defects susceptible of remedy ordinarily would not warrant recision. But major defects which render the house unfit for habitation, and which are not readily remediable, entitle the buyer to recision and restitution. The builder-vendor's legitimate interests are protected by the rule which casts the burden upon the purchaser to establish the facts which give rise to the implied warranty of fitness, and its breach."

*Waggoner* v. *Midwestern Development, Inc.* (1967, S.D.) 154 N.W.2d 803, was an action by the purchasers of a new residence against the builder-vendor for damages resulting from water seeping into the basement of the house. Because of the absence of evidence to establish negligence, the court reversed the judgment below which had dismissed the action and gave directions to reinstate a count based on breach of implied warranty, saying that where in the sale of a new house the vendor is also a builder of houses for sale there is an implied warranty of reasonable workmanship and habitability surviving the delivery of the deed. The court added that the builder is not required to construct a perfect house, that in determining whether a house is defective the test is reasonableness and not perfection, and that the duration of liability is likewise determined by the standard of reasonableness.

And in a recent Texas case (1968), *Humber* v. *Morton*, 426 S.W.2d 554, 25 A.L.R.3rd 372, the plaintiff, purchaser of a new house from the builder-vendor, sought to recover damages for a fire allegedly caused by a defective fireplace and chimney. The trial court entered summary judgment for the defendant on the grounds that the doctrine of *caveat emptor* applied to the sale of the new house, and thus no implied warranty that the house was fit for human habitation arose from the sale. On appeal by the plaintiff, the Texas Supreme Court reversed the judgment, and held that (1) the law raised an

implied warranty on the part of the builder-vendor of a new house that the house was constructed in a good workmanlike manner and was suitable for human habitation, and (2) the rule of *caveat emptor* had no application to the sale of a new house by the builder-vendor.

In the case at bar the defendant's argument that there are sound reasons for retaining the doctrine of *caveat emptor* in this case lacks substantial merit. A reading of the cases in this area of the law affords numerous examples and situations illustrating the harshness and injustice of this ancient common law doctrine when applied to the sale of a new house by the builder-vendor.

■ The law should be based upon current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast with the times. Ancient distinctions which make no sense in today's society and tend to discredit the law should be readily rejected as they appear to have been step by step in the cases cited *supra*. See *Schipper* v. *Levitt & Sons, Inc., supra*, at p. 325; *Caporaletti* v. *A. F. Corporation*, D.C., *supra*. The impelling policy considerations which led to the restrictions on the doctrine of *caveat emptor* are as applicable in the aspect dealt with here as in the cases reviewed *supra*.

■ Based on the facts disclosed in this case, the law will imply a warranty against structural defects. Although the contract of sale in this case was entered into before completion of the house, we find no rational doctrinal basis for differentiating between a sale of a newly constructed house by the builder-vendor and the sale of an automobile or any other manufactured product.

On the grounds stated in the opinion, the appeal must be sustained.

*Judgment reversed and cause remanded.*