Joe **TAVARES**, Appellant
(Defendant below),

v.

Robert A. and Rosemary **HORSTMAN**,
Appellees (Plaintiffs below).

No. 4481.

Supreme Court of Wyoming.

Dec. 3, 1975.

J. F. Mahoney, Casper, signed the brief *
and Mayne W. Miller, Casper, appeared
in oral argument for appellant.

R. R. Bostwick, Murane, Bostwick,
McDaniel, Scott, Greenlee & Owens, Cas-
per, signed the brief and appeared in oral
argument for appellees.

Before GUTHRIE, C. J., and Mc-
CLINTOCK, RAPER, THOMAS and
ROSE, JJ.

RAPER, Justice.

██ We are going to affirm the trial
court and discuss three primary issues in
the following light: (1) The rule of cave-
at emptor (let the buyer beware) does not
apply to the sale of new housing by a
builder-vendor to the vendee; (2) There is
an implied warranty of liability that goes
with the sale of new housing by a builder-
vendor to the vendee; (3) Damages are
recoverable by a vendee for negligent de-
sign and construction of new housing by
the builder-vendor. Appellant's counsel
with commendable candor contemplated
this court's concurrence in those current
concepts but seeks avoidance of their im-
pact by two contentions: (1) Denial of
fault by appellant-defendant and a claim of

---

* J. F. Mahoney became disqualified to partici-
pate further in this case upon his appoint-
ment as District Judge, Seventh Judicial Dis-
trict, which appointment took place prior to
oral argument.

sole negligence or contributory negligence on the part of appellees-plaintiffs; and (2) Any existing implied warranty had expired.

The defendant, a land developer and builder, sold the plaintiffs a tract of land; the defendant built a home for plaintiffs on the property under an oral agreement with no express warranty. A warranty deed with only the usual covenants of title was delivered. Within a little over a year, the septic tank system backed sewage to a depth of about three inches into the plaintiffs' basement before it was discovered. A plumber was called; after pumping out the tanks a couple of times, he advised that something would have to be done about the system. Defendant was called and informed of this nasty predicament. He dug down to the discharge pipe, perforated the line and let the raw sewage flow into an open trench. Nothing further was done. Plaintiffs called him to do something further but he said he could not work on it because he had to go on a vacation. The stinking situation was so deplorable that plaintiffs called in an experienced septic tank contractor. The system had to be rebuilt because of its inadequacy. The soil in the area of the drainage field was of tight gumbo so a particular design and manner of installation was necessary. The contractor who rebuilt the system testified that the problems with the one he replaced were several. The defendant had installed foundation drainage pipe all around the house and constructed it to discharge into the septic tank system, causing an overload of the sewage disposal scheme. There was not enough capacity for the size home it was to serve. The excess water caused the drainage field to waterlog, backed effluent into the tanks, killed the bacterial actions supposed to be taking place there and, in turn, blocked the flow of sewage from the house. Having no place else to go, the noxious wastes covered the basement floor.

Plaintiffs expended $2,083.00 to correct the condition.

■ Defendant had obtained no permit for construction of the system. He testified that he had but could not find it. The issuing agency could find no record of its issuance. Such permits are issued by the Casper-Natrona County Health Department. By its procedure, there is first determined the size of the residence, number of bathrooms, occupancy and what garbage disposal, dishwasher, washing machine or any other water-using appliance will be discharging into the system. That agency then makes soil percolation tests to determine its porosity—the capacity of the ground to absorb water. From that is concluded the size and type unit required. The system is inspected before backfilling and before a permit is issued. The trial judge was justified in concluding that defendant skipped this important step, which finding is an element of the court's general finding.

No request for findings of fact and conclusions of law were requested by either party before trial or at any time, pursuant to Rule 52(a), W.R.C.P. The court made only a general finding in favor of plaintiffs and against defendant. Judgment for plaintiffs in the sum of $2,083.00 was entered.

■ The facts, as related, are set out in the posture most favorable to the plaintiffs following the standard set out in *Stock v. Roebling*, Wyo.1969, 459 P.2d 780, 784, wherein it was said:

" * * * We must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. [Citing case.]" [1]

1. This rule appears in so many cases that it is impractical to list them. For others, see ■ 989 and 994(3), Appeal and Error, West's Wyoming and Pacific Digests.

█ We have accordingly given no credence to defendant's claim of sole or contributory negligence of the plaintiffs in the erection of a barn over part of the drain field. Furthermore, the plaintiffs cannot be charged with negligence for a condition to which they were not alerted by a proper warning even if some act on their part may have contributed to the failure of the septic tank system. *Brubaker v. Glenrock Lodge International Order of Odd Fellows,* Wyo.1974, 526 P.2d 52, 55. There was no occasion for them to be aware or even dream of any technicality involved in connection with operation of a septic tank system. But there were other reasons why defendant must fail in that regard. The burden of proving the negligence of another is upon him asserting it. *Maxted v. Pacific Car & Foundry Co.,* Wyo.1974, 527 P.2d 832, 835. Contributory negligence is an affirmative defense with the burden of proof on the defendant. *Anderson v. Schulz,* Wyo.1974, 527 P.2d 151, 153. Questions of negligence and contributory negligence are for the trier of fact. *Fitzsimonds v. Cogswell,* Wyo.1965, 405 P.2d 785, 786. The defendant's evidence failed.

█ In the absence of special findings of fact, the reviewing court must consider that a judgment carries with it every finding of fact which is supported by the evidence. *School District No. 32 in Fremont County v. Wempen,* 1959, 80 Wyo.

311, 321, 342 P.2d 232, 235. A judgment will be affirmed on appeal if sustainable on any legal ground appearing in the record. *Heyl v. Heyl,* Wyo.1974, 518 P.2d 28, 30; *In re Romer,* Wyo.1968, 436 P.2d 956, 958.

From the cases which we shall cite in this opinion, it appears that the rule of the past and still existing in a few jurisdictions is that no implied warranties of quality in the sale of realty existed in the common law.[2] The doctrine of caveat emptor reigned supreme. Cracks, however, began to appear in that tenet with respect to the sale of new housing. Favorite references used in the cases and work of scholars [3] come from the thoughts of Cardozo, The Nature of the Judicial Process (1921), p. 152:

> "* * * If judges have woefully misinterpreted the *mores* of their day, or if the *mores* of their day are no longer those of ours, they ought not to tie, in helpless submission, the hands of their successors."

Later, Cardozo in his treatise, The Growth of the Law (1924), pp. 136–7, refined the idea to:

> "* * * A rule which in its origin was the creation of the courts themselves, and was supposed in the making to express the *mores* of the day, may be abrogated by courts when the *mores* have so changed that perpetuation of the

2. It was said in *Dennison v. Harden,* 1947, 29 Wash.2d 243, 250, 186 P.2d 908, 912, "* * * we have found no cases, * * * which recognize that there is such a thing as an implied warranty in the sale of real estate. * * *" *Steiber v. Palumbo,* 1959, 219 Or. 479, 347 P.2d 978, 78 A.L.R.2d 440, decided that caveat emptor prohibits an implied warranty of quality. Those are but examples of the early rule. The latter case contains citations to a number of other cases representing the then time-worn concept. Both states have abandoned caveat emptor. See *House v. Thornton,* 1969, 76 Wash.2d 428, 457 P.2d 199, where basement walls, floors and foundation slipped when supporting terrain slid away and the builder was held liable. See also *Hoye v. Century Builders, Inc.,* 1958, 52 Wash.2d 830, 329 P.2d 474. *Caldwell v.*

*Wells,* 1961, 228 Or. 389, 365 P.2d 505, shows an inclination away from the rule by avoiding the question and discussing the new hypothesis in its footnote 1. Finally, in *Yepsen v. Burgess,* Or.1974, 525 P.2d 1019, *Steiber* was overruled and the court held an implied warranty applies where a vendor builds new houses for purpose of sale and the warranty extends to a septic tank and drain field system.

3. Peel, V Land and Water L.Rev. 637 (1970), The Expanding Scope of Liability in the Home Construction Enterprise. Lists of other law review articles are found in *Theis v. Heuer,* infra, and *Elderkin v. Gaster,* 1972, 447 Pa. 118, 288 A.2d 771, where there was failure to provide potable water.

rule would do violence to the social conscience. * * * " [4]

In Wyoming, this court has had no occasion to sustain the concept of caveat emptor in a real estate transaction. In *Lawson v. Schuchardt*, Wyo.1961, 363 P.2d 90, 93, however, it was said:

" * * * It must be noted that the doctrine of caveat emptor is employed by modern courts under new standards of business ethics which demand that statements of fact be at least honestly and carefully made. *Byrnes v. Mutual Life Insurance Company of New York*, 9 Cir., 217 F.2d 497, certiorari denied 348 U.S. 971, 75 S.Ct. 532, 99 L.Ed. 756; Prosser, Torts, pp. 552, 553 (2 ed.)."

We, therefore, have the advantage over many other courts in not having to set aside a principle of long standing in our jurisprudence.

Since World War II homes have been built in tremendous numbers. There have come into being developer-builders operating on a large scale. Many firms and persons, large and small operators, hold themselves out as skilled in home construction and are in the business of building and selling to individual owners. Developers contract with builders to construct for resale. Building construction by modern methods is complex and intertwined with governmental codes and regulations. The ordinary home buyer is not in a position, by skill or training, to discover defects lurking in the plumbing, the electrical wiring, the structure itself, all of which is usually covered up and not open for inspection.

A home buyer should be able to place reliance on the builder or developer who sells him a new house. The improved real estate the average family buys gives it

thoughtful pause not only because of the base price but the interest involved over a long period of time. This is usually the largest single purchase a family makes for a lifetime. Some may be able to pay cash but we cannot single out that buyer in the formulation of a rule.

It ought to be an implicit understanding of the parties that when an agreed price is paid that the home is reasonably fit for the purpose for which it is to be used—that it is reasonably fit for habitation. Illusory value is a poor substitute for quality. There is no need for the buyer to be subjected to the harassment caused by defects and he deserves the focus of the law and its concern. The significant purchase of a new home leads logically to the buyer's expectation that he be judicially protected. Any other result would be intolerable and unjust, as the cases which follow demonstrate.

One of the first courts in the United States recognizing the worthiness of concern by the courts [5] in this area was the Supreme Court of Colorado. In *Carpenter v. Donohoe*, 1964, 154 Colo. 78, 83–84, 388 P.2d 399, 402, it was held that where a home is the subject of sale, there are implied warranties that it was built in a workmanlike manner, that applicable building codes were complied with and it is suitable for habitation. The rule of caveat emptor was shoved aside. In that case, within a short time after the plaintiffs moved in, the walls began to crack and a wall of the basement began to cave in. It is startling that in such a situation a seller would have the courage to plead caveat emptor but he did; the trial court bought it but the supreme court reversed.

In *Humber v. Morton*, Tex. 1968, 426 S. W.2d 554, 25 A.L.R.3d 372, Morton built and sold new houses and contracted to sell

---

4. Chief Justice Blume often said that when the reason for a rule ceases, the rule itself should cease. *Chicago and North Western Railway Co. v. City of Riverton, Fremont County*, 1952, 70 Wyo. 84, 122, 247 P.2d 660, 660–661. In *Burns v. Burns*, 1950, 67 Wyo. 314, 330, 224 P.2d 178, 183, he added that the rule of stare decisis should not be rigid and the law is a developing science.

5. The first case in this country was *Vanderschrier v. Aaron*, 1957, 103 Ohio App. 340, 140 N.E.2d 819, involving a defective sewer line flooding basement in house bought before completion. *Carpenter v. Donohoe*, infra, declared there is no distinction between buying a house under construction and one already finished. We agree.

a completed house and lot to Humber. The only warranty contained in the deed was the warranty of title. No other warranties, written or oral, were connected with the sale. Humber claimed that the house was not suitable for human habitation because the fireplace and chimney were not properly constructed. As a result of the defect, the house caught fire and partially burned the first time a fire was ignited in the fireplace. Morton defended on the ground that the doctrine of caveat emptor applied to all sales of real estate. The Texas court held that caveat emptor, as applied to new housing, was outdated and out of harmony with modern home buying practices, so, therefore, the builder-vendor impliedly warrants that such a house was constructed in a good, workmanlike manner and was suitable for human habitation. The court said (426 S.W. 2d p. 562):

"The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work."

In *Theis v. Heuer,* Ind. 1972, 280 N.E.2d 300, adopting the opinion of an intermediate appellate court favoring the vendee, is an excellent history of the development of the flight from caveat emptor to an implied warranty of fitness for human habitation and negligence of builders as a ground for recovery. In that case, the plaintiffs purchased a new residence from the defendants-builders. It had not been inhabited by any other person or persons prior to purchase. It was sold in a defective condition which impaired it for the intended use of habitation, which condition the plaintiffs were not aware of. The faulty construction rested in the manner in which sewer lines and drain tile were placed by the defendant during construction which caused water and sewage to back up into the residence when heavy rains occurred and resulted in a collection of water and sewage on the first floor as deep as three or four inches on occasion. The Supreme Court approved opinion made the following pertinent statement:

"* * * Neither this court nor our Supreme Court are wedded to the wooden concept of stare decisis which causes adherence to past decisions when the reason for such decisions no longer exist. [Citing cases.]"

In *Wawak v. Stewart,* 1970, 247 Ark. 1093, 449 S.W.2d 922, the heating and air conditioning duct work had been embedded in the ground before the concrete slab floor was poured over the top of it. Heavy rains caused water and dirt to seep into the ducts and thence through the floor vents into the house interior, ruining the carpets and damaging furniture and drapes. The court, in holding for the buyer, said (449 S.W.2d p. 923):

"* * * Twenty years ago one could hardly find any American decision recognizing the existence of an implied warranty in a routine sale of a new dwelling. Both the rapidity and the unanimity with which the courts have recently moved away from the harsh doctrine of caveat emptor in the sale of new houses are amazing, for the law has not traditionally progressed with such speed."

There is one phase of *Wawak* which indicates that the solicitude for the buyer anticipates that he, too, must be reasonable. Part of the damage would not have been caused had the buyer accepted an offer of the seller to install a sump pump and the court held he should have mitigated his damages.

In *Bethlahmy v. Bechtel,* 1966, 91 Idaho 55, 415 P.2d 698, an irrigation ditch had existed across the lot. The builder laid open drainage tile through the ditch and covered it over with earth. The house was built with an attached garage over the top of the covered ditch. When the irrigation season started, water seeped through the basement walls and spread over the tiled floors, as well as causing the garage floor to become unsupported by a washing away

of the dirt underneath. The complaint was for rescission and restitution. The court observed that there was no arms-length dealing. The defects were not discoverable by inspection; the defendant dealt from a position of superior knowledge and the plaintiff was ignorant of the facts. The court, holding for the vendee, said (415 P.2d p. 711):

> "The implied warranty of fitness does not impose upon the builder an obligation to deliver a perfect house. No house is built without defects, and defects susceptible of remedy ordinarily would not warrant rescission. But major defects which render the house unfit for habitation, and which are not readily remediable, entitle the buyer to rescission and restitution. The builder-vendor's legitimate interests are protected by the rule which casts the burden upon the purchaser to establish the facts which give rise to the implied warranty of fitness, and its breach * * *"

*Fisher v. Simon*, 1961, 15 Wis.2d 207, 112 N.W.2d 705, 711, is a case in which a new home's basement developed serious leaks in the floor due to careless backfilling around the basement walls resulting in hydrostatic pressure which cracked the floors through which water was forced. The court concluded that there is no public policy which would be promoted by relieving a builder-vendor from liability and held that as between the vendee and the builder-vendor, it is more equitable to assess the loss from a latent defect against the latter.

The cases assessing liability to the vendor under an implied warranty or negligence, or both, continue to pile up.[6] The rule even extends to personal injuries suffered as a result of defective construction.[7]

6. The following are cases not otherwise cited or footnoted in this opinion: *Hartley v. Ballou*, 1974, 286 N.C. 51, 209 S.E.2d 776, (failure to provide adequate waterproofing for basement caused foot of water to flow into basement); *Casavant v. Campopiano*, R.I.1974, 327 A.2d 831, (defective roof threatening safety of occupants); *Pollard v. Saxe & Yolles Development Co.*, 1974, 12 Cal.3d 374, 115 Cal.Rptr. 648, 525 P.2d 88, (ceiling buckled, sliding glass doors were sticking and water remained on patio decks, court recognized, discussed and adopted rule of implied warranty of quality attaching to new construction but denied recovery because of unreasonable delay in giving notice of defects); *Smith v. Old Warson Development Co.*, Mo.1972, 479 S.W.2d 795, (slab settled causing doors to stick, walls to crack, bathtub to pull away from wall); *Cochran v. Keeton*, 1971, 287 Ala. 439, 252 So.2d 313, (fire damage to newly constructed house); *Rothberg v. Olenik*, 1970, 128 Vt. 295, 262 A.2d 461, (foundation walls cracking and bulging due to improper grading and waterproofing, floors uneven and hazardous); *Weeks v. Slavick Builders, Inc.*, 1970, 24 Mich.App. 621, 180 N.W.2d 503, (cement title roof leaked, damaging ceilings, six years after first leak occurred); *Vernali v. Centrella*, 1970, 28 Conn.Sup. 476, 266 A.2d 200, (unfriendly fire started behind fireplace due to defective construction with combustible material); *Rutledge v. Dodenhoff*, 1970, 254 S.C. 407, 175 S.E.2d 792, (septic tank placed above level of house with field drain lines pointing upward rather than below which, coupled with high water table caused it to overflow into the house, not giving trouble for eight months); *Crawley v. Terhune*, Ky.App., 1969, 437 S.W.2d 743, (water came through basement walls and would not drain out); *Totten v. Gruzen*, 1968, 52 N.J. 202, 245 A.2d 1, (child burned by exposed hot pipe leading to radiator); *F & S Construction Co. v. Berube*, 10 Cir. 1963, 322 F.2d 782, (cracks appeared in house, cupboards and windows twisted due to a soil that swelled and heaved); *Jones v. Gatewood*, Okl.1963, 381 P.2d 158, (water drawn by capillary attraction up through concrete slab floor); *Dow v. Holly Manufacturing Co.*, 1958, 49 Cal.2d 720, 321 P.2d 736, (defective gas heater installed in wall.) See also Annotation, Liability of Builder-Vendor or Other Vendor of New Dwelling for Loss, Injury, or Damage Occasioned by Defective Condition Thereof, 25 A.L.R.3d 383, and supplement.

7. *Schipper v. Levitt and Sons, Inc.*, 1965, 44 N.J. 70, 207 A.2d 314, where a child was scalded by hot water (190 to 210 degrees) from a tap without a mixing valve. This is a case which has been influential in development of the doctrine of implied warranty where the buyer relies upon the skill of the developer and the implied representation that a house will be erected in a reasonably workmanlike manner and reasonably fit for habitation and discards builders' arguments of "uncertainty and chaos"; *Rogers v. Scyphers*, 1968, 251 S.C. 128, 161 S.E.2d 81, involved a claim that while house was relatively new, the plaintiff was injured when climbing a

It would appear that the desires expressed in 7 Williston on Contracts (3d Ed.) § 926A, p. 818, have come to pass, when it was said early in the development of the law we now approve:

"It would be much better if this enlightened approach were generally adopted with respect to the sale of new houses for it would tend to discourage much of the sloppy work and jerry-building that has become perceptible over the years."

The wildfire spread of cases we cite demonstrates the need for the approach to which Williston refers.

■■■ We now reach defendant's claim that it is not necessary that the work be done perfectly and any implied warranty that may have existed has expired. Some question exists as to what should be the period of implied warranty. We appreciate that different parts of construction may have a different expected life, such as a foundation compared to a roof. We have no problem in the present case because the septic tank system failed before a minimum life expectancy had been reached; its breakdown is traced to the negligent design and is considered a major component of a residence not served by a county or municipal sewer system. In *Waggoner v. Midwestern Development, Inc.,* 1967, 83 S.D. 57, 154 N.W.2d 803, water seeped into house from an underground spring feeding a nearby pond; the court held that the duration of liability is determined by the standard of reasonableness. See also to the same effect, *Padula v. J. J. Deb-Cin Homes, Inc.,* 1973, 111 R.I. 29, 298 A.2d 529, where water flowed into basement severely damaging family room and personal property there stored. We likewise hold that the duration of liability is determined by the standard of reasonableness. The premature failure of a sewer system is no trifling matter, so we cannot accept defendant's contention that it

was of minor consequence; the house was rendered uninhabitable.

■■■ In summary then, we hold that under the circumstances of this case, the rule of caveat emptor no longer protects the builder-vendor because it is unrealistic in the light of the change that has emerged in the morals of the marketplace. That doctrine was based upon an arms-length transaction between seller and buyer and contemplated comparable skill and experience, which does not now exist; they are not in an equal bargaining position and the buyer is forced to rely on the skill and knowledge of the builder.

■■■ We further hold along with a vast majority of courts that where a vendor builds new houses for the purpose of sale, the sale carries with it an implied warranty that it is constructed in a reasonably workmanlike manner and is fit for habitation. For the moment, we confine this holding to the sale of new housing. It is perceived the boundaries of implied warranties will be circumscribed by experience in future cases. In the many cases studied, we see lines being drawn but a definite determination will necessarily depend upon the circumstances of each particular case. We do not include used housing in our holding but visualize that circumstances may require consideration of some sales as included. We do not exclude the possibility that industrial property and vacant land in a proper setting may be embraced, but make no ruling in that regard.

We finally hold that a buyer may proceed not only upon the basis of implied warranty but upon the basis of negligent design and construction.[8] There obviously can be and probably is in some cases an indistinguishable overlap but an implied warranty would embrace a wider range of causes and be less restrictive in proof.

There was no error.

Affirmed.

---

folding stairway to the attic; it fell, seriously injuring her; *Talley v. Skelly Oil Co.,* 1967, 199 Kan. 767, 433 P.2d 425, where overhead heater slipped from its moorings and struck a sublessee, contractor held liable;

*Leigh v. Wadsworth,* Okl.1961, 361 P.2d 849, where porch roof fell on tenant, builder held liable two years later.

8. *Fisher v. Simon,* supra.