George R. GASAWAY and Jeanne M. Gasaway, husband and wife, Appellants (Defendants),

v.

Aleck REITER, Appellee (Plaintiff).

No. 86–288.

Supreme Court of Wyoming.

May 11, 1987.

James P. Castberg, Powell, for appellants.

Margaret Sommers of McCarty & Cranfill, Cody, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Appellee, Aleck Reiter, sued his daughter, Jeanne Gasaway and her husband to quiet title to his life estate or in the alternative, for money damages for loss of the life estate. This appeal is from a judgment awarding appellee damages in the sum of $8,800 and returning his personal property or the value thereof.

We affirm.

The issues presented for review are whether the parties intended to create a life estate in appellee at the time of conveyance of real property, whether the life estate was lost by subsequent conveyance, and whether the evidence was sufficient to support the amount of damages awarded appellee.

By warranty deed recorded February 17, 1972, appellee conveyed 2 acres of land and his family home located thereon to appellants. With respect to the life estate, the deed contained the following:

> "RESERVING, HOWEVER, TO THE GRANTOR HEREIN, ALECK REITER, a life estate in the within and foregoing property * * *."

Appellants claimed they did not know that the deed would contain a reservation of a life estate. The deed with this reservation, however, was dated February 15, 1972, recorded two days later, on February 17, 1972, and delivered to appellants. Appellants paid monthly payments over the next five years without complaint. At trial, appellant Jeanne Gasaway testified that appellee was supposed to continue living on the place, and that this had been discussed with the lawyer who prepared the deed. Appellant George Gasaway testified that appellee had the right to live there "[f]or the rest of his life or however long he wanted to." Appellee Reiter testified: "I got a life estate out there" and "[t]hat was the deal, I was supposed to live there and he was supposed to see that I got in the ground."

During 1975 a neighbor became aware of an error in the metes and bounds description in the common boundary dividing their property from that of appellee and appellants. Corrective quitclaim deeds were executed conveying this property to the neighbor and back to appellants. The corrective deeds made no mention of the life estate. During January 1985, appellee became ill and entered a hospital for care and treatment. After a few days he was released from the hospital but, because of his illness, could not live alone. He stayed at first with a son in Cody, Wyoming, and later with a daughter in Billings, Montana. When he returned to the property, he discovered that appellants had demolished his home.

■ We must first determine whether appellee retained a life estate when he, by deed, conveyed his property to appellants. A deed must be considered as a whole and the intent of the parties gathered from the plain and unambiguous language contained therein, *Dawson v. Meike*, Wyo., 508 P.2d 15 (1973). No particular language is required to create a life estate. If, from the deed, the intent of the grantor is apparent, it is effective to reserve to himself a life estate in property in which the fee is granted to another. *Krug v. Reissig*, Wyo., 488 P.2d 150, 52 A.L.R.3d 748 (1971). The intent of the parties here could not have been more clear. They agree that appellee could live on the property for his lifetime. They informed the lawyer employed to prepare the deed of their agreement, and he placed a life estate reservation in the deed that none could misunderstand and which was effective to reserve to appellee a life estate in the property conveyed.

■ It is next contended that the life estate was surrendered when appellants and appellee quitclaimed this property to a neighbor to correct an error in the metes and bounds description of their common boundary lines and the neighbor quitclaimed the property back to appellants without mentioning or preserving the life estate. The parties agree that these deeds were corrective only and that they were not executed for the purpose of terminating the life estate. Appellee testified without contradiction that they did not intend to terminate the life estate. Clearly, failing to preserve appellee's life estate in the corrective deeds was a mutual mistake. A deed that does not express the intention of the parties because of mutual mistake may be reformed to provide what the parties intended. *Arndt v. Sheridan Congregation of Jehovah's Witnesses, Inc.*, Wyo., 429 P.2d 326 (1967). For reformation to be granted there must be:

"(1) a meeting of the minds—a mutual understanding between the parties—prior to the time a writing is entered into, (2) a written contract or agreement, (3) which does not conform to the understanding, by reason of mutual mistake." *Crompton v. Bruce*, Wyo., 669 P.2d 930,

934 (1983). See also *Pfister v. Brown*, Wyo., 498 P.2d 1243 (1972).

Here the parties agreed that the sole purpose of the deeds was correction of a misdescription, that they were not for the purpose of terminating the life estate, and that they did not intend to terminate the life estate. The mistake was mutual. The court properly reformed the deed to preserve appellee's life estate as agreed to by the parties.

Appellants finally contend that appellee's witness, who established the value of his house as $8,800, was not credible and that there was not sufficient evidence to support the award of $8,800 for destruction of the house. The parties agreed that appellee's damages should be the value of his home at the time of its destruction. The case was tried upon that basis without objection. Whether that was the proper measure of damages we do not decide, for it was not raised and is not before us on appeal. The only question presented to us is the sufficiency of evidence to support a value at the time of destruction of $8,800.

Appellee testified that the value of his house was $10,000. An expert real estate appraiser testified to his extensive training and experience, to the method utilized in determining value, and that the value of the house at the time of destruction was $8,800. The trial court found the witness credible, accepted his opinion of value, and awarded judgment in the sum of $8,800. We have often stated:

"The standard of review for questions concerning the sufficiency of the evidence is that we assume that the evidence in favor of the successful party is true leaving out of consideration the evidence of the unsuccessful party in conflict therewith and give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it." *Walter v. Moore*, Wyo., 700 P.2d 1219, 1222 (1985). See also *Stockton v. Sowerwine*, Wyo., 690 P.2d 1202 (1984); *Thomasi v. Koch*, Wyo., 660 P.2d 806 (1983); *Goodwin v.*

*Upper Crust of Wyoming, Inc.*, Wyo., 624 P.2d 1192 (1981).

■ True, the evidence in this case was conflicting. It is not, however, our function as an appellate court to resolve conflicting evidence or retry the case. We have said that

> "[t]he greatest difficulty in stating a general rule for recovery of damages has been in those cases involving damages to realty. 22 Am.Jur.2d Damages § 135. So much is subjective and uncertain in determining fair market values before and after the damage, diminished values, whether the damage is permanent or temporary, the nature and extent of the damage and methods of repair.

\* \* \* \* \* \*

> " '[I]f there is evidence from which a reasonable estimate of money damages may be made, that is sufficient, the primary objective being to determine the amount of loss, applying whatever rule is best suited for that purpose.' *Douglas Reservoirs Water Users Association v. Cross*, Wyo., 569 P.2d 1280, 1284 (1977)." *Anderson v. Bauer*, Wyo., 681 P.2d 1316, 1323–1324 (1984).

There was substantial evidence here to support the damage award.

Affirmed.