2001 WY 5

James GRAHAM, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 99–326.

Supreme Court of Wyoming.

Jan. 19, 2001.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Hughes, Assistant Appellate Counsel.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker, Senior Assistant Attorney General; Theodore E. Lauer, Director, Jeffrey Moll and Sean Persin, Student Interns, of the Prosecution Assistance Program.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

GOLDEN, Justice.

[¶ 1] The Wyoming legislature has authorized the sentencing judge in a criminal case to order a defendant convicted of a crime to pay to the victim of his crime actual pecuniary damages suffered by that victim resulting from the defendant's crime. Wyo. Stat. Ann. §§ 7–9–102, 103 (LEXIS 1999). A sentencing judge ordered James P. Graham, who was convicted of the crimes of obtaining property by false pretenses,[1] to pay $4,243.44 to one of his victims and $19,916 to another victim. Graham appeals the sentencing judge's order, claiming the amounts ordered are excessive. We affirm in part, reverse in part, and remand with directions.

---

1. Wyo. Stat. Ann. § 6–3–407(a)(i) (LEXIS 1999).

[¶ 2] Graham entered into a written contract in July 1997 to build Mr. and Mrs. Walt Mortimer a 24 feet by 30 feet multi-story garage for the stated sum of $22,850. The parties amended their contract by adding concrete work for $1,650.00 and water and sewer work for approximately $1,600. The Mortimers paid $16,000 to Graham. On September 18, 1997, Graham promised in writing to complete the project by October 15, 1997. Graham laid the footers and the foundation for the garage but did nothing more. There were defects in Graham's work. The foundation wall was not level, and Graham failed to leave a knock-out for a walk-in door. According to Mr. Mortimer, the foundation "was out of plum [sic] completely and had to be built up in order to do the garage." Because Graham failed to perform the contract, the Mortimers hired another builder to complete the project, paying him "somewhere in the vicinity of $22,000" or $23,000. The Mortimers also filed a civil action against Graham because of his failure to perform the contract. Graham failed to answer in that action, and in June 1998 the Mortimers obtained a default judgment against him for the principal sum of $19,916, plus interest and costs. Graham did not appeal that judgment.

[¶ 3] In April 1998 Graham agreed to build a garage and reshingle a home for Mr. and Mrs. Mark Harris for the sum of $10,100. Later, they agreed to add a loft storage area to the garage which increased the project cost to $10,300. Harrises paid Graham $9,000. Although Graham began construction, he failed to complete the project as agreed. Harrises hired and paid $3,077.54 to another builder to finish the project without the loft storage area. They also paid $865.90 for a steel double door that Graham had ordered but not paid for, and $300 to a roofer whom Graham had used but not paid.

[¶ 4] In May 1999 the prosecuting attorney for Sweetwater County filed charges of obtaining property by false pretenses against Graham arising from his dealings with the Mortimers and Harrises. Ultimately, Gra-

ham and the prosecutor reached a plea agreement under the terms of which Graham pleaded no contest but reserved the right to contest the amounts of restitution to which the Mortimers and the Harrises were entitled. The district court accepted Graham's no contest plea and then heard testimony and received evidence regarding restitution. With respect to restitution for the Mortimers, the district court found that Graham had caused the Mortimers pecuniary loss in the amount of $19,916. Because there was evidence that Mortimers had received between $500 and $600 from a wage garnishment against Graham, the district court declared that the restitution amount of $19,916 would be reduced by the amounts previously received by the Mortimers from that wage garnishment. The prosecuting attorney informed the district court that such an adjustment would be made. As we read the judgment signed and entered by the district court, however, we do not see any adjustment to the amount ordered of $19,916. Neither Graham nor the State raise that adjustment on appeal, but we feel compelled to raise it on our own.

[¶ 5] With respect to restitution for the Harrises, the district court found that Graham had caused the Harrises pecuniary loss in the amount of $4,243.44, and ordered Graham to pay restitution in that amount.

[¶ 6] Graham asserts that the restitution amounts for the Mortimers and the Harrises are excessive. He contends that the correct restitution to be paid to the Mortimers is $13,000, not $19,916; and that the correct restitution to be paid to the Harrises is $1,165.90, not $4,243.44. With respect to the Mortimers, Graham explains that the original cost of the project was $22,900, and Mortimers paid him $16,000 toward that cost; Mr. Mortimer estimated that the value of the work which Graham did was $3,000; therefore, Graham is accountable for the $16,000 paid to him minus the $3,000 value of his work, the result being $13,000. He argues that no evidence was presented as to why it allegedly cost $22,000 or $23,000 to finish the garage when he had done the cement and footers and water and sewer work. He makes no effort, however, to challenge Mr.

Mortimer's testimony that his work was defective.

[¶ 7] The State counters Graham's challenge to the Mortimers' restitution by pointing out that the district court apparently accepted the amount of the default judgment in the Mortimers' civil action against Graham as the appropriate amount of restitution in this case. The State notes that Graham fails to cite authority that such a judgment may not be used to determine the amount of restitution in a criminal case. Although the State also offers an alternative justification based on the other evidence produced to support the $19,916 restitution amount, we need not consider that alternative because we think Wyoming's restitution statute makes room for a district court judge's using the civil judgment amount as the restitution amount. Under Wyo. Stat. Ann. § 7–9–101(a)(iv) (LEXIS 1999), the legislature has defined "restitution" to mean "full or partial payment of pecuniary damage to a victim." And, in Wyo. Stat. Ann. § 7–9–101(a)(iii) (LEXIS 1999), the legislature has defined "pecuniary damage" to mean "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event," excluding punitive damages and non-economic damages. The Mortimers in fact obtained a legitimate default judgment for the principal sum of $19,916 in their civil action against Graham arising out of the same facts of the criminal case. In the interests of the efficient administration of justice, nothing more remained for the district court to do in this case once the civil default judgment against Graham was received into evidence, and that judge correctly relied on that judgment to determine the appropriate amount of restitution that Graham must pay the Mortimers. Because the district court also determined, however, that any amounts Graham had paid to the Mortimers under wage garnishment should be deducted from the restitution amount, and the judgment in this case does not show that any such deduction was made, we remand to the district court with directions that such deduction be made.

[¶ 8] With respect to the Harrises, Graham's challenge to their restitution amount of

$4,243.44 is straightforward. He concedes that the Harrises are entitled to the $300 they paid to the roofer and the $865.90 they paid for the steel double door, but he contends that the remaining $3,077.54 which the Harrises paid to another builder to finish the garage is excessive because no evidence was presented to explain why it cost more than $1,300, the difference between the original contract price of $10,300 (garage plus loft storage area) and the $9,000 which Harrises had paid to Graham, to finish construction. Graham concludes that "[a]t a bare minimum, the amount of restitution claimed by [the Harrises] should have been reduced by $1,300.00, since [they were] not actually 'out' that money, as it was a legitimate amount that had to be paid on the contract price."

[¶ 9] The State counters Graham's argument in several ways. First, the State notes that Graham's claim of a $1,300 reduction should be actually only $1,100 because a storage loft was never built. Thus, the original contract price is $10,100, not $10,300. Next, the State correctly notes that Graham did not challenge the validity of the bid of $3,077.54 submitted by the builder whom the Harrises chose to finish the garage construction. Generally, it is the party who has breached the contract who bears the burden of proof in establishing matters asserted by him in mitigation or reduction of damages. *Sturgeon v. Phifer*, 390 P.2d 727, 731 (Wyo. 1964). Because Graham presented no evidence of how much of the $3,077.54 could have been reduced, we are not moved by his claim of insufficiency of evidence on the State's part. *Banner v. Town of Dayton*, 474 P.2d 300, 308 (Wyo.1970). We believe the State's evidence sufficiently established that the reasonable cost of completion was $3,077.54.

[¶ 10] Next, the State acknowledges that Graham's "cost avoided" argument is a concept that has currency in connection with determining the appropriate measure of damages to which a non-breaching owner is entitled when seeking to recover the cost of completion from a breaching contractor who has abandoned the project. *See,* E. Allan Farnsworth, 3 Farnsworth on Contracts § 12.11, at 220–22, and § 12.13, at 245

(2nd ed.1998); Restatement (Second) of Contracts § 347 cmt. e, illus. 12, and § 348 cmt. c, illus. 2 (1981). The State points out, however, that authority exists for refusing to credit a willfully breaching party with "cost avoided" amounts. Farnsworth, *supra,* § 12.13 at 249–51, and § 12.17a, at 291–96. In this regard, the State reminds us that Graham's "challenge to the amount of restitution set by the court must demonstrate an abuse of discretion." *Brock v. State,* 967 P.2d 26, 27 (Wyo.1998). Because authority exists for ignoring "cost avoided" amounts in the case of a willful breach, the State reasons, the district court's determination of the cost of completion, without deduction of the "cost avoided," as the appropriate amount of restitution given Graham's willful breach, does not constitute an abuse of discretion. Attractive as that argument may appear, we think the issue is really the more basic one of the choice of the correct rule of law with respect to the measure of damages in a breach of a construction contract. We think the Restatement Second's damages formulation, in which willfulness does not figure, is the better choice. Therefore, the owner's measure of damages is the cost of completion of the unfinished structure less the cost avoided as a result of the substitute completion transaction. Restatement (Second) of Contracts §§ 347, 348 (1981); *Eastlake Construction Company, Inc. v. Hess,* 102 Wash.2d 30, 686 P.2d 465, 473–75 (1984). Applying this rule in this case, we hold that the district court should have reduced the $3,077.54 cost of completion by the $1,100 cost avoided, which is the difference between the original contract price of $10,100 and the $9,000 the Harrises paid Graham at the outset. We remand to the district court with directions that such reduction be made.

[¶ 11] In summary, we have affirmed the district court's use of the amount of a civil action default judgment as an appropriate restitution amount in this case, but have remanded with directions that the court determine the amount of money realized by the Mortimers from their wage garnishment against Graham and deduct that amount from the $19,916 restitution amount which

the court has ordered Graham to pay. We have reversed the district court's decision not to reduce the Harrises' $4,243.44 restitution amount by the $1,100 cost avoided amount on the original $10,100 contract price and remanded with directions that such cost avoided amount be deducted from the $4,243.44 restitution amount which the court has ordered Graham to pay.