# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 103

APRIL TERM, A.D. 2014

August 15, 2014

LEGACY BUILDERS, LLC, a Wyoming
Limited Liability Company and JOE
SENESHALE, an individual,

Appellants
(Defendants),

v.

S-13-0231

BRITTANY ANDREWS and BRIAN
ANDREWS,

Appellees
(Plaintiffs).

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellants:*
    Clark D. Stith, Rock Springs, Wyoming.

*Representing Appellees:*
    Jacob A. Skog and V. Anthony Vehar, Vehar Law Offices, P.C., Evanston, Wyoming. Argument by Mr. Skog.

*Before BURKE, C.J., and HILL, KITE,\* DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**Fox, Justice.**

[¶1]  Brittany Andrews and her husband Brian Andrews (the Andrews) contracted to purchase a newly constructed home from Appellants Joe Seneshale and his company Legacy Builders, LLC (collectively "Legacy") in Rock Springs, Wyoming.  The house had numerous structural and cosmetic flaws.  The Andrews filed a complaint against Legacy for breach of contract and breach of implied warranty of habitability.  After a bench trial, the district court awarded the Andrews judgment in the amount of $319,302 based on cost of repairs.  On appeal, Legacy challenges: (1) the damage award, arguing that the cost of repair measure of damages was incorrect and that the correct measure of damages should have been the change in fair market value between the home as contracted and the home as actually constructed; (2) the district court's reliance on the Andrews' expert's testimony as to future damages; and (3) the district court's finding that expansive soils were the cause of the Andrews' damages.  We affirm, but remand with instructions to correct the damage award.

## ISSUES

[¶2]  We address two issues on appeal:

1.  When the cost of repairs in a homeowners' construction case alleging breach of contract and breach of warranty may be disproportionate to the loss in value to the home resulting from the breach, which party has the burden of establishing the lesser measure of damages?

2.  Did the district court commit clear error when it relied on the Andrews' cost of repair estimates for items that were not yet damaged or when it found that expansive soils caused damages to the home's foundation?

## FACTS

[¶3]  The Andrews entered into a contract with Legacy for construction and purchase of a single-family residence in Rock Springs, Wyoming.  In early March 2006, the Andrews closed on the house and lot for a total purchase price of $239,700.00.

[¶4]  During construction, Legacy conducted a soils test on the property which revealed that it contained expansive soils.  In his September 20, 2005 report to Legacy, the civil engineer who conducted the soils test recommended, "the owner should take certain precautions to minimize the possibility of any movement within the structure."  The civil engineer further recommended that a copy of his report be provided to the Andrews.  Legacy never communicated with the Andrews about the engineer's conclusion and did not provide them with a copy of the report.

1

[¶5]    Shortly after taking possession of the property, the Andrews became aware of defects in the home such as cracking and separation of drywall, warping of door and window frames, and lifting and buckling of the basement floor.  They contacted Legacy by telephone and in writing to have the defects corrected.  Later, on August 28, 2006, the Andrews sent a letter to Legacy notifying it of twenty-seven construction defects.  On January 17, 2007, after Legacy failed to correct the defects, the Andrews sent the same letter to Legacy via certified mail.  Though Legacy denied ever having seen the correspondence, its secretary signed the certified return receipt.

[¶6]    The condition of the home continued to deteriorate, and in July 2007, the Andrews heard loud "cracking" noises and saw cracks forming in the drywall in their bedroom, the kitchen, living room, guest bedroom, hallways, and in the walls and floor of the basement.

[¶7]    On July 18, 2007, the same civil engineer who conducted the previous soils testing conducted a post-construction field review of the home.  In his report to Legacy, he noted that the home had experienced minor movement in the foundation and basement floor slab.  He recommended, "[t]o prevent continued movement in the structure minimal amount of watering should be applied to the lawns.  Drainage should be directed away from the structure as much as possible."  Once again, Legacy failed to provide this report to the Andrews or advise them of its recommendations.

[¶8]    By the end of July 2007, the Andrews laid sod, and installed and began using a sprinkler system in the backyard, maintaining the original grade provided by Legacy.  They also contracted with a third party who extended the original driveway.

[¶9]    In late August 2007, the Andrews contracted Rick Wright, owner of Rocky Mountain Home Inspection Services, to assess the damage to their home.  In his report, Mr. Wright provided photos and comments, and generally concluded, "[s]ettlement, heaving and bearing wall movement have caused cracking and movement to the upstairs drywall throughout the main floor walls and ceilings."

[¶10] The Andrews repeatedly sought to have Legacy repair the damage, but were unsuccessful.  On July 2, 2010, they filed a complaint alleging causes of action for breach of contract and breach of implied warranty of habitability.

[¶11] At the bench trial, the Andrews presented expert testimony on helical piers designed to stabilize the foundation.  Their expert testified that helical pier installation would cost $111,830, based on his inspection of the home.  Legacy's expert testified the cost would be $44,800.  The trial court accepted the Andrews' expert testimony and rejected Legacy's as being speculative and not supported by evidence because the Legacy expert had not inspected the home.

2

[¶12] Rick Wright, the Andrews' expert, testified that after installing the helical piers, the existing defects as well as some additional collateral damage resulting from the stabilization process would need to be remedied at an estimated cost of $199,472. In contrast, Legacy's expert estimated the cost of remedying existing and collateral damage from the helical pier installation at $21,000, also conceding at trial to another $10,000 to $15,000 for other items. Again, the trial court accepted the Andrews' expert's testimony as credible evidence of the nature and extent of repairs necessary after stabilization by the installation of helical piers.

[¶13] The trial court ruled that Legacy breached the construction contract and the implied warranty of habitability, and awarded a total of $319,302 in damages, consisting of: (1) $111,830 for the cost of repairing the foundation with helical piers; (2) $199,472 for repairs resulting from unworkmanlike construction, including repairs that would be required after installation of the helical piers; and (3) $8,000 for the cost of temporary housing during the pendency of the repairs.[1] In its Amended Findings of Fact, Conclusions of Law and Judgment, the district court further noted,

> 12. Although [Legacy] urge[s] this Court to calculate damages on the basis of change in value, [Legacy] failed to provide evidence regarding change in value and only offered cost of repair evidence to rebut [the Andrews'] cost of repair evidence.

The record contains no indication that Legacy attempted to present evidence to support using an alternative measure of damages. Legacy timely filed this appeal.

## DISCUSSION

### I. When the cost of repairs in a homeowners' construction case alleging breach of contract and breach of warranty may be disproportionate to the loss in value to the home resulting from the breach, which party has the burden of establishing a lesser measure of damages?

[¶14] At trial, the Andrews requested damages in an amount sufficient to repair their home. Legacy did not advocate or present evidence on any other measure of damages, instead opting to present its own cost of repair evidence in an effort to minimize the damage award. Legacy now contends the cost of repair damages are disproportionate and that damages should have been calculated according to the "diminution in market value" – the difference in market value between the property as constructed, and the property as it would have been if the home builder had fully performed.

---

[1] Legacy does not take issue with the $111,830 for helical pier stabilization or the $8,000 temporary housing damages.

3

[¶15]   We hold that the lesser of the two measures of damage – cost of repair or diminution in value – should generally be awarded for breach of contract and breach of warranty.   However, when the defendant has failed to present diminution of value evidence, cost of repair damages can be awarded even when they may be disproportionate.

[¶16]   Whether a trial court "employed the proper methodology or legal standard to calculate the damages award is an issue of law, which we review *de novo*." *Knight v. TCB Constr. & Design, LLC*, 2011 WY 27, ¶ 16, 248 P.3d 178, 183 (Wyo. 2011).

## A.   Damages for breach of contract

[¶17]   Contract damages are intended to give the injured party the benefit of the bargain – to place the injured party in the same position he would have been if the breach had never occurred.   *See, e.g., McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 859 (Wyo. 1990) ("Wyoming generally recognizes the benefit of the bargain damages in relation to contractual damages."); *see also* Restatement (Second) of Contracts § 347 (1981).   The objective of the law is to compensate the injured party for breach, not to provide them a windfall.   *Madison v. Marlatt*, 619 P.2d 708, 713-14 (Wyo. 1980).

[¶18]   Wyoming applies the Restatement (Second) of Contracts § 348 to determine contract damages, *Graham v. State*, 2001 WY 5, ¶ 10, 16 P.3d 712, 715 (Wyo. 2001), and both parties agree that § 348(2) governs our decision.   That section provides:

> (2)   If a breach results in defective or unfinished construction and the loss in value to the injured party is not proved with sufficient certainty, he may recover damages based on
> (a)   the diminution in the market price of the property caused by the breach, or
> (b)   the reasonable cost of completing performance or of remedying defects if that cost is not clearly disproportionate to the probable loss in value to him.

Restatement (Second) of Contracts § 348 (1981).

[¶19]   As comment c to § 348 notes,

> If an award based on the cost to remedy the defects would clearly be excessive and the injured party does not prove the actual loss in value to him, damages will be based instead on the difference between the market price that the property would have had without the defects and the market price of

4

the property with the defects. This diminution in market price is the least possible loss in value to the injured party, since he could always sell the property on the market even if it had no special value to him.

*Id*. at cmt. c. If an injured party's costs of repair are "clearly excessive" or "clearly disproportionate" to the actual loss resulting from the breach, then the diminution in market value is the appropriate measure of damages. *See id*.

[¶20] We have adopted a similar rule, although phrased differently, in negligence cases resulting in damage to real property.

> A fair summary of the state of our damage rules is that, if the damage to the real property is so extensive as to substantially amount to a taking of the property, the measure of damages will be the difference in the market value before and after the damage is inflicted. If the damage is not so extensive as to substantially amount to a taking, the cost of repairs to the property will measure the damages, with incidental damages recoverable in some instances. In any case, the lower of the two figures, cost of repairs as compared to the difference in value before and after, will demonstrate the damage ceiling.

*City of Kemmerer v. Wagner*, 866 P.2d 1283, 1287-88 (Wyo. 1993) (remanded for new trial on the issue of damages); *see also Ely v. Kirk*, 707 P.2d 706, 713 (Wyo. 1985); *Belle Fourche Pipeline Co. v. Elmore Livestock Co*., 669 P.2d 505, 514 (Wyo. 1983); *Town Council of City of Hudson v. Ladd*, 37 Wyo. 419, 425-26, 263 P. 703, 705 (1928); *Anderson v. Bauer*, 681 P.2d 1316, 1324-25 (Wyo. 1984) (homeowners in negligence action against builder presented evidence of both cost of repair and diminution in value and trial court's cost of repair award of damages was affirmed as to real property damage).[2]

---

[2] Legacy correctly points out that, in tort, the cost of restoring a property to its original condition, even where that cost might exceed the value of the home, might be recoverable, because of the personal nature of homeownership. *See Anderson*, 681 P.2d at 1324-25. Legacy argues that in this case the district court awarded tort damages despite the fact that the Andrews only made contract-based claims. However, there is no indication in the record that the district court based the damage award on tort theory. Rather, it considered the damage evidence presented and awarded damages for the cost of repairing the foundation, for repairs resulting from unworkmanlike construction, and for repairs likely to be required after the foundation stabilization is completed. Such damages are properly awarded in contract cases.

[¶21] In this case, neither party presented evidence sufficient to determine the diminution in value resulting from Legacy's breach, and therefore neither the district court nor this Court can determine the loss in value to the injured party.[3]

[¶22] Legacy contends that it only learned of the Andrews' claim for damages in excess of the fair market value of their home after the deadline to designate experts had passed and, as a result, it could not have introduced the fair market value evidence, stating "[i]t was not until six months after the original trial date, in June 2012, shortly before the twice continued trial that Plaintiffs revealed that they intended to ask for damages more than the home's purchase price." While the amount of damages claimed may have been a moving target, Legacy did not file pretrial motions seeking leave of court to introduce additional evidence, nor did it seek a continuance. At trial, Legacy only claimed it had not received the computation of damages required by W.R.C.P. 26(c). The trial court rejected the contention that Legacy did not know of the amount of damages to be claimed, noting that the parties had been discussing numbers and settlement for over two years. Legacy conceded that, as early as December of the previous year, it had been given an aggregate damage figure of $298,000.

[¶23] We will not overturn the trial court's ruling "absent a clear abuse of discretion." *Armstrong v. Hrabal*, 2004 WY 39, ¶ 10, 87 P.3d 1226, 1230 (Wyo. 2004) (quoting *Dysthe v. State*, 2003 WY 20, ¶ 16, 63 P.3d 875, 883 (Wyo. 2003)). "Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary or capricious manner." *Id*. (quoting *Dysthe*, 2003 WY 20, ¶ 16, 63 P.3d at 883). The record indicates that Legacy was aware of the magnitude of the Andrews' damage claim for almost nine months before trial. We therefore find that the trial court did not abuse its discretion when it dismissed Legacy's Rule 26 argument. As Legacy's counsel conceded at oral argument, Legacy simply made a strategic decision to fight the damage battle on the cost of repairs field, and not to present diminution of value evidence.

[¶24] The trial court concluded that it could not calculate damages on the basis of change in value, because "[Legacy] failed to provide evidence regarding change in value and only offered cost of repair evidence to rebut [the Andrews'] cost of repair evidence."

[¶25] We likewise find only cost of repair evidence in the record. Legacy failed to present diminution of value evidence to either establish disproportionality or to support an alternative measure of damages. This Court will not "resort to speculation or conjecture in determining the proper amount to award." *Cottonwood Valley Ranch, Inc.*

---

[3] All that we do know is that the parties agreed that the house, as contracted, was worth $239,700 in 2005, as evidenced by the new home purchase contract, which might represent an approximate total economic loss in the property's value. As the Court noted in *Ely*, "[t]his is not probable inasmuch as the land should have some value even if the house is not usable. The house itself should have some salvage value." *Ely*, 707 P.2d at 715.

6

*v. Roberts*, 874 P.2d 897, 899 (Wyo. 1994). Although Legacy has attempted to present additional information on the diminution in value of the property in its appellate brief, we will not accept new facts on appellate review. *Bird v. Rozier*, 948 P.2d 888, 892 (Wyo. 1997).

[¶26] We turn then to the issue of which party had the burden of establishing the diminution in value of the house as a result of Legacy's breach. It is well established in Wyoming that the party seeking recovery of damages carries the burden of proof. *Berthel Land & Livestock v. Rockies Express Pipeline LLC*, 2012 WY 52, ¶ 25, 275 P.3d 423, 433 (Wyo. 2012) ("The plaintiff [in a breach of contract action] carries the burden of producing sufficient evidence to prove its damages with a reasonable degree of certainty."); *Knight*, 2011 WY 27, ¶ 17, 248 P.3d at 184; *Willmschen v. Meeker*, 750 P.2d 669, 672 (Wyo. 1988) ("The burden of proving the damages, beyond nominal ones, is upon the party seeking the recovery."); *Graham*, 2001 WY 5, ¶ 9, 16 P.3d at 715.

[¶27] While the plaintiff bears the initial burden, "[g]enerally, it is the party who has breached the contract who bears the burden of proof in establishing matters asserted by him in mitigation or reduction of damages." *Graham*, 2001 WY 5, ¶ 9, 16 P.3d at 715. *See also Sturgeon v. Phifer*, 390 P.2d 727, 731 (Wyo. 1964) ("[T]he party who commits a wrong has the burden of proof in establishing matters asserted by him in mitigation or reduction of damages."). In *John Thurmond & Associates, Inc. v. Kennedy*, 668 S.E.2d 666 (Ga. 2008), the Georgia Supreme Court held in a similar scenario that the plaintiff could choose to recover based on the cost of repair method, and need not present diminution in value evidence. *Id.* at 669. "In response, the defendant has the burden to present any contradictory evidence challenging the reasonableness or proportionality of those damages and where appropriate, evidence of an alternative measure of damages for the jury's consideration." *Id.* (citing 11 Corbin on Contracts, § 60.1, 614-15 (2005) (burden on contractor guilty of breach to prove award of repair costs constitutes economic waste)). *See also Martin v. Design Constr. Servs., Inc.*, 902 N.E.2d 10, 15 (Ohio 2009) ("[T]he essential inquiry is whether the damages sought are reasonable. Either party may introduce evidence to support or refute claims of reasonableness, including evidence of the change in market value attributable to the temporary injury. But proof of diminution in value is not a required element of the injured party's case."); *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 543 (Tenn. Ct. App. 2005) ("We hold that the plaintiffs do not have the burden of offering alternative measures of damages. The burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omission.").

[¶28] We hold that, while the plaintiff has the burden of proving damages at trial, it is the defendant's burden to challenge the reasonableness or disproportionality of the plaintiff's method and, where appropriate, to present evidence supporting an alternative measure of damages.

7

[¶29] The Andrews met their burden of establishing the damages for Legacy's breach of contract based on reasonable cost of repairs. Legacy then bore the burden of presenting evidence of disproportionality or of an alternative measure of damages. Because Legacy presented no such evidence, the district court's award of damages based on the Andrews' cost of repair evidence is affirmed.

**B.    Damages under breach of the implied warranty of habitability**

[¶30] While the rationale regarding damages recoverable under the breach of contract analysis above applies equally to the breach of implied warranty of habitability, we briefly address damages available under such a breach.

[¶31] We first applied the implied warranty of habitability to a breach of construction contract in 1975, explaining:

> It ought to be an implicit understanding of the parties that when an agreed price is paid that the home is reasonably fit for the purpose for which it is to be used--that it is reasonably fit for habitation. Illusory value is a poor substitute for quality. There is no need for the buyer to be subjected to the harassment caused by defects and he deserves the focus of the law and its concern. The significant purchase of a new home leads logically to the buyer's expectation that he be judicially protected. Any other result would be intolerable and unjust[.]

*Tavares v. Horstman*, 542 P.2d 1275, 1279 (Wyo. 1975). "[W]here a vendor builds new houses for the purpose of sale, the sale carries with it an implied warranty that it is constructed in a reasonably workmanlike manner and is fit for habitation." *Id*. at 1282.

[¶32] "The measure of damages [for breach of implied warranty of habitability and fitness] is the cost of repair, but may also include diminished value of the property." *Deisch v. Jay*, 790 P.2d 1273, 1277 (1990). In *Deisch*, we left the door open to either cost of repair or diminution in market value, depending on the nature of the injury, noting, "these kinds of damages cannot be determined with mathematical precision and may be inherently uncertain. All that is required is that they be determined with a reasonable degree of certainty based upon the evidence adduced and the nature of the injury." *Id.* (internal citations and quotation marks omitted).

[¶33] Here, where there was no evidence of diminution in value or disproportionality, the trial court properly relied upon cost of repair evidence to determine damages.

***II. Did the district court commit clear error when it relied on the Andrews' cost of repair estimates for items that were not yet damaged or when it found that expansive soils caused damages to the home's foundation?***

**A. The Court's award for future damages**

[¶34] Our review of the evidence supporting the calculation of damages is a question of fact, which we review for clear error. *Knight,* 2011 WY 27, ¶ 16, 248 P.3d at 183 (citing *Velasquez v. Chamberlain*, 2009 WY 80, ¶ 27, 209 P.3d 888, 895 (Wyo. 2009)).

> A finding is clearly erroneous when, even though substantial evidence supports it, the reviewing court is left with the definite and firm conviction that a mistake was made.
>
> > We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law. Although the factual findings of a trial court are not entitled to the limited review afforded a jury verdict, the findings are presumptively correct.
> >
> > This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses. We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it. Findings may not be set aside because we would have reached a different result.

*Id.* at ¶ 16, at 183-84 (quoting *Velasquez*, 2009 WY 80, ¶ 14, 209 P.3d at 891).

[¶35] Legacy argues that the district court committed clear error in relying upon a $199,472 cost of repair estimate that included costs for items that were not yet damaged. With a limited exception, we find that the district court's cost of future repairs finding is not clearly erroneous.

[¶36] Damages for a breach of contract may include recovery for incidental or consequential loss caused by the breach, as long as such damages are a foreseeable result of the breach. *See JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1195 (Wyo. 1992); *see also* Restatement (Second) of Contracts, §§ 347, 351 (1981). However,

9

"[d]amages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." Restatement (Second) of Contracts, § 352 (1981). "For the breach of a building or construction contract by the contractor, consequential or special damages may be recovered by the property owner if they were foreseeable when the contract was made." 24 Samuel Williston, *Treatise on the Law of Contracts* § 66:18, at 477 (Richard A. Lord ed., 4th ed. 2002). As a result, "courts have permitted the recovery of such diverse consequential damages as . . . delay . . . the costs of renting another place to live and of interim financing . . . the cost of necessary cleanup and minor repair work incurred by the owner as a result of the construction defects; and the probable cost of future repairs." *Id*.

[¶37] The trial court, in its Amended Findings of Fact, Conclusions of Law and Judgment, found that:

> 38. Rick Wright, an expert builder and home inspector, testified credibly regarding defects and repair costs which would be necessary after stabilization of the foundation. With the exception of the 20% contingency fee included in Wright's bid, the bid submitted by Wright is credible evidence of the nature and extent of construction defects resulting from the shifting foundation and unworkmanlike construction and the reasonable cost of repairing the damage to the Home after stabilization is complete.

[¶38] The Andrews' expert, Mr. Wright, testified to 19 categories of repairs to existing damage or to damage that he foresaw as a result of the stabilization process. Mr. Wright's cost of repair estimate totaled $199,472. The testimony and evidence supported the damages for 17 of the 19 items, and we find no clear error as to those items.[4] However, he conceded on cross-examination that damages to two items – the trusses and the roof – were not reasonably foreseeable.

[¶39] Mr. Wright testified that the roof and trusses accounted for 5% of his estimate. Because those items were not currently damaged and Mr. Wright presented no credible testimony of the likelihood that they would be damaged after stabilization, they are not foreseeable and the Andrews are not entitled to recovery for them. As a result, the $199,472 damage figure must be reduced by 5% to $189,498. We find no clear error in the trial court's reliance on Mr. Wright's testimony with respect to the remaining categories of damages.

---

[4] They consisted of current defects and probable collateral damage that would result from stabilizing the foundation, ranging from removal and replacement of defectively-constructed load bearing walls in the basement, to repair of windows damaged in the stabilization process. Some of these were also supported by Legacy's own witness, Mr. Bustos.

## B. Expansive soils as cause of damage to home's foundation

[¶40]  In its final argument, Legacy contends that the trial court committed clear error in finding that expansive soils caused the damage to the home's foundation when undisputed testimony suggested that the primary reason for the majority of the defects was the sinking foundation.  Legacy attempts to bolster this argument by isolating a single phrase in the district court's Amended Findings of Fact, Conclusions of Law and Judgment, "[t]he home is structurally unstable due to expansive soils on which it was constructed."  We find this argument misleading, as the complete statement of the district court reads,

> 47. The Home is structurally unstable and defective due to the expansive soil upon which it was constructed, workmanship that is well below industry standards and failure by [Legacy] to correct defects in a timely manner, thereby resulting in continuing damage.

[¶41]  Our review of the trial transcript indicates a number of factors that led to the breach of contract and breach of implied warranty of habitability, including the report by Legacy's own civil engineer who provided pre- and post-construction reports identifying the problem of expansive soils.  We find no clear error in that finding by the district court.

## *CONCLUSION*

[¶42]  The district court did not err when it awarded the Andrews' breach of contract damages based on cost of repairs, and it did not commit clear error when it relied upon the majority of Andrews' cost of repair expert's testimony.  Further, we find no clear error in the district court's finding that expansive soils were a factor in the damage caused to the Andrews' home.  We remand to the district court for entry of judgment reflecting the reduction of the cost of repairs to the amount of $189,498.